# Claasen *against* Shaw.

A constable, having an execution in his hands, took an obligation from a stranger, conditioned for the payment of the debt, interest, and costs of the execution, or the delivery of property to satisfy the same, at a certain time and place; upon failure to do either, it was held, that, although void as a statutory obligation, yet an action would lie on it at common law in the name of the constable for the use of the plaintiff in the execution.

. In an action upon an obligation, taken by an officer, for the amount of the debt, interest, and costs of a *fieri facias* in his hands, an averment by the defendant, that the bond was taken for ease and favour is immaterial, and need not be traversed by the plaintiff.

ERROR to *Westmoreland* county.

Samuel Shaw for the use of Charles Winel against Peter Claasen.

" Peter Claasen, late of said county, yeoman, was summoned to answer Samuel Shaw, who sued for the use of Charles Winel and Sarah, his wife, late Sarah Larner, of a plea that he render unto the said plaintiffs the sum of 41 dollars and 74 cents, lawful money, which, to him he owed and unjustly detains; and hereupon the said plaintiffs complain, for that whereas, one James Claasen and one

[Claasen v. Shaw.]

Thomas Johnston, before and at the time of the making of the writing obligatory of the said Peter, herein after mentioned, was indebted to the said Sarah, since intermarried with the said Charles Winel, in a certain sum of money, to wit, the sum of 35 dollars and 87 cents, lawful money, for which said sum of money a certain action had been commenced and prosecuted by and at the suit of the said Sarah against the said James Claasen and Thomas Johnston, before John Wells, Esquire, one of the Commonwealth's justices of the peace, in and for said county, in which said action judgment was rendered for the said Sarah, against the said James Claasen and Thomas Johnston, for the aforesaid sum of 35 dollars and 87 cents, debt, lawful money, together with the costs of said action, on which said judgment, the said Sarah afterwards, to wit, on the 30th day of January 1834, at said county, the said judgment remaining unsatisfied, sued out and prosecuted a certain writ of execution directed to the said Samuel Shaw, then being a constable in the said county aforesaid, by which said writ the said constable was commanded to levy distress on the goods and chattels of the said James Claasen and Thomas Johnston, and make sale thereof, according to law, to the amount of said debt, with the interest and costs thereon, indorsed on the said writ of execution, to wit, to the amount of 41 dollars and 74 cents, lawful money, and to make return thereof to the said justice, in twenty days from the date thereof; which said writ so endorsed, as aforesaid, was delivered to the said Samuel Shaw, who then and from thence and until and after the return thereof, was constable in due form of law, to be executed; and whereas, afterwards, to wit, on the 11th day of February in the year aforesaid, at the county aforesaid, in consideration of the premises, and that the said Samuel, at the special instance and request of the said Peter, would forbear and cease to execute the said writ, and would stay all further proceedings therein against the said James Claasen and Thomas Johnston, he the said Peter then and there by his certain writing obligatory, sealed with his seal, and to the court here shown *whose date is the day* and year last aforesaid, firmly bound himself unto the said Samuel Shaw, on the 26th day of February in the year last aforesaid, to pay the amount of the debt, interest, and costs endorsed on the said execution, or deliver property to satisfy the same, at the house of a certain Mrs Linsebigler, as by the said writing obligatory more fully appears. And the said Samuel, in fact, saith that the said Peter, did not pay the amount of the said debt, interest, and costs, on the said execution, on the said 26th day of February, then next after the date of the said writ, or deliver property to satisfy the same, at the house of the said Mrs Linsebigler, but therein wholly failed and made default, whereby the said writing obligatory became forfeited, by means whereof, action hath accrued to the said plaintiff's to demand and have of and from the said defendant, the said sum of 41 dollars and 74 cents, lawful money. Yet the said Peter, although often requested, hath not as yet

paid the debt, interest, and costs of the said execution amounting to the aforesaid sum of 41 dollars and 74 cents, lawful money, or any part thereof, to the said Samuel, but hath hitherto wholly neglected and refused so to do, and still doth neglect and refuse to pay the same or any part thereof, to the said Samuel, to the damage, &c."

" And the said Peter comes and prays oyer of the writing obligatory aforesaid, and it is read to him in these words, to wit:  'We promise to pay the amount of the within execution to Saml. Shaw, on Saterday the 26th of this inst. or deliver property, to satisfy the debt intrest cost at the house Mrs Linsenbiglers without stay of execution as witnes my hand and seal.'

" Execution dated the 30th day of January 1824, never returned.

" Which being read, the said Peter says, that he ought not to be charged by virtue of the said writing, because he says, that although true it is, a certain judgment was obtained and execution issued thereon, as set forth in the plaintiff's declaration in this cause against the said defendant filed ; yet by an act of the general assembly of the commonwealth of Pennsylvania, before that time passed, that is to say, on the 20th day of March 1810, it was provided, that the said constable should be and was bound to execute the said process and should not be discharged from liability thereon but by producing to the justice, on or before the return day of the execution the receipt of the plaintiff, or such other return as may be sufficient in law.  And by the same act of assembly, it was also further provided, that, 'In all cases where a constable levies an execution issued from a justice of the peace, he shall endorse the goods or chattels so levied on the execution, or schedule thereto annexed, which levy shall be a lien on such chattels for twenty days after levying the same, and no longer; and the constable making such levy is hereby authorized and empowered to take a bail bond in the following or like words, viz: " We, A. B. and C. D. or either of us are held and firmly bound unto E. F., constable, in the sum of —— upon condition that the said A. B. shall deliver unto E. F. aforesaid, the following goods and chattels ——— on the —— day of ——— at the house of ——— which is taken in execution at the suit of G. H. against A. B., or pay the amount of the said execution, with costs. Witness our hands and seals this —— day of ———." But if the said defendant shall not deliver the chattels so specified in such bond, or pay the amount of such execution, the constable may then proceed to the sale of such goods or chattels so levied, provided the lien created by such levy be not expired, &c."

" Yet the said Peter saith, that after the making of the said act and at the time of making said writing as supposed in the plaintiff's declaration, the said constable had not made any levy on any of the goods and chattels, nor taken into custody the bodies of the said James Claasen and Thomas Johnston, or either of them, but that the said supposed writing was taken for ease and favour, and against the

[Claasen v. Shaw.]

provisions of the acts of assembly in such case made and provided, and by colour of the office of the said Samuel Shaw. And so the said Peter saith, that the said writing here produced in form aforesaid, and for the cause aforesaid, as before mentioned, is void in law, and this he is ready to verify, wherefore he prays judgment, if the said plaintiff ought to have his said action against him, &c."

" And the said plaintiffs, as to the said plea of the said defendant, by him secondly above pleaded, saith the same, and the matters therein contained, in the manner and form as the same are above pleaded and set forth, are not sufficient in law to bar or preclude him, the said plaintiff, from having and maintaining his aforesaid action thereof, against him the said defendant, and that he, the said plaintiff, is not bound by the law of the land to answer the same, and this he, the said plaintiff is ready to verify; wherefore, for want of a sufficient plea in this behalf, he, the said plaintiff, prays judgment, and his debt aforesaid, together with his damages by him sustained, on occasion of the detention thereof, to be adjudged to him, &c."

" And the said defendant saith that his plea, by him secondly above pleaded, and the matters therein contained, in the manner and form as the same are above pleaded and set forth, are sufficient in law, to bar and preclude the said plaintiff from having and maintaining his aforesaid action thereof, against him the said Peter, and that he, the said Peter, is ready to verify and prove the same, as the said court shall direct and award; wherefore, inasmuch as the said plaintiff hath not answered the said plea, nor hitherto, in any manner, denied the same, the said Peter prays judgment, and that the said plaintiff may be barred from having, or maintaining his aforesaid action thereof, against him, the said defendant, &c.

Assignment of errors.

The court erred in entering judgment in favour of the defendant in error, the law (from the above state of the pleadings) being with the *plaintiff* in error.

The obligation is void, because it is substantially different from the bond prescribed by the act of assembly of the 20th March 1810, sect. 18th.

It is void as an obligation at *common law*, there being no consideration, either expressed or implied.

*Armstrong*, for plaintiff in error, cited the act of 20th March 1810; Farmers' Bank of Reading *v.* Boyer, 16 *Serg. & Rawle* 4; Dive *v.* Mannigham, 1 *Plowd.* 62 ; M'Kee *v.* Stannard, 14 *Serg. & Rawle* 382; 1 *Saund.* 168.

*Kuhns*, for defendant in error, cited 2 *Chit. Pl.* 477; *Cro. Car.* 309; 10 *Coke* 100 *a;* 1 *Mod.* 452; 4 *Mod.* 187.

[Claasen v. Shaw.]

The opinion of the Court was delivered by

ROGERS, J.—The eighteenth section of the act of the 20th of March 1810, authorizes a constable who levies an execution, issued from a justice of the peace, to take a bond, in the following, or like words, viz: We, A. B. and C. D., or either of us, are held, and firmly bound with E. F., constable, in the sum of ———, upon condition that the said A. B. shall deliver unto E. F. aforesaid, the following goods and chattels——, on the —— day of ——, at the house of ———, which is taken in execution at the suit of G. H. against A. B., or pay the amount of the said execution, with costs. Witness our hand and seals, &c. The bond is taken for the forthcoming of goods, on which the constable has previously levied, and is a bail bond, which it is intended shall be executed by the defendant, with surety, conditioned in the alternative, either for the delivery of the goods taken in execution, or for payment of the amount of the execution, with costs.

The obligation, on which suit is brought, differs not only in form, but in substance, from the bond prescribed in the act. The obligation is given to the constable by a stranger, to which the defendant in the execution is no party, with condition to deliver property, other than the property levied, or (for in truth no levy was made) to satisfy the debt, interest and costs. These are substantial variances which avoid the instrument as a statutory obligation, the distinction being between a variance in form and substance. The former does not avoid the bond, but the latter does, as has been held in repeated decisions. If any thing be added to the condition prescribed in the act, which is not legal, that which is inserted against the form of the act, avoids all the rest. *Plowd.* 66; 10 *Rep.* 100. But if a bond be taken, in a circumstance contrary to the provisions of the statute, that is only prescribed *for the direction* of the sheriff, as to take sureties, which is for his safety; or if any thing is required specially by the condition, that the act only *imports,* but does not *literally require,* such variations do not hurt. Beawfage's Case, 10 *Coke* 100; Webb *v.* Cliffton, *Cro. Eliz.* 808; Blackbourn *v.* Michelbourn, *Ibid.* 852; Farmers' Bank in Reading *v.* Boyer, 16 *Serg. & Rawle* 4. Being therefore void as a statutory obligation, the question is, is it good at common law? and we are of the opinion that it is, on the authority of Beawfage's Case, 10 *Rep.* 99. A bond to pay money into court, at the return of a *fieri facias,* is good; for, although it be done by colour of office, and the condition is not according to the statute, yet it is valid, for the statute 23 Hen. 6, c. 9, extends only to bonds by or for prisoners. In Beawfage's Case the doubt was, upon the general words of the act, that if the sheriffs, or any other officers, take any other obligation, in other form than is prescribed in the act, by colour of their offices, the bond shall be void. The court, however, held, upon full consideration, that since the statute 23 Hen. 6, upon a *fieri facias* delivered to the sheriff, he may take a bond from the defendant to pay the money into the court at the return

[Claasen v. Shaw.]

of the writ. And if he can take a bond from the defendant, there is no reason why he cannot take one from a stranger for a similar purpose. Before the statute the sheriff was not obliged to admit a person to bail who was arrested on mesne process, unless he sued out a writ of mainprize, though he might have taken bail of his own accord. This arbitrary power in the sheriff, of admitting or refusing bail, produced great extortion and oppression, and hence the passage of the statute by which the sheriff, who arrests a person on mesne process, in a civil suit, is not only authorized, but obliged to take a bail bond, if sufficient surety is offered, otherwise he subjects himself to an action by the party aggrieved. It is obvious that a bond, taken for the payment of money, on a *fieri facias*, does not come within the mischief, nor is it within the purview of the statute. And, therefore, since the statute 23 Hen. 6, it was held in Beawfage's Case, already cited, when a *fieri facias* is delivered to the sheriff, he may take a bond of the defendant, and, as before observed, of a stranger, to pay the money into court at the return of the writ; such bond is not within the statute 23 Hen. 6; for that statute, as is there held, extends only to such bonds, which any in his ward makes to the sheriff, but is good at common law. Here, the writ was directed to the constable, and although, by the requirements of the eleventh section of the act of the 20th of March 1810, the execution performs the double office of a *fieri facias* and *ca. sa.*, yet it is only for want of sufficient distress, that the constable, under his writ, can take the body of the defendant into custody. In the absence of any averment, in the defendant's plea to the contrary, we must intend that there were goods and chattels, on which a levy may have been made, sufficient to answer the plaintiff's demand, and, of course, the defendant's body was not liable to be taken in execution; and this brings it within the principle of Beawfage's Case, already cited. The defendant avers in his plea, that the bond was taken for ease and favour, and this raised a doubt whether, on the authority of Sir John Lenthall *v.* Cooke, 1 *Lev.* 254, where it was held that the traverse for the ease and favour is the most material thing, the want of the traverse did not vitiate the plea. But that was a case were the defendant was a prisoner in execution, and on that ground it was ruled, that the traverse of the ease and favor was material. In answer to the argument urged at the bar, that the traverse was immaterial, the court say, that the traverse, for the ease and favour, is the most material thing, and it may well be intended to be taken for the better security of his imprisonment—for the prisoners of the king's bond are so numerous, that the house cannot hold them, but they are permitted to lodge within the rules, and, therefore, there is good reason to take security for their true imprisonment, and constant usage has been, to take such obligations. It is obvious, therefore, when the defendant is in custody, that the intention of taking the bond becomes material, and, like every other material averment, must be traversed. Not so when the bond is taken on a *fieri facias*, for it is of no consequence

v.—3 k

what the intention of the parties may be, for the bond is good notwithstanding; and hence, the averment that it was taken for ease and favor is immaterial, and there is no necessity to tender a traverse on an immaterial averment.

Judgment affirmed.