## WHITSETT v. WOMACK, USE, &c.

1. A statute provided, that where a steamboat, &c. was seized under process issued upon a proceeding in the nature of a libel in admiralty, that it should be lawful for the master, &c. to enter into a stipulation or bond, with sufficient sureties to answer all the demands which shall be filed against the boat, and the same shall be released and discharged from such lien: *Further*, the clerk of the Court in which the libel was filed shall take the stipulation or bond, and it shall not be void for want of form, but shall be proceeded on and recovered according to the plain intent and meaning thereof: *Held*, that a bond taken under this statute was neither void or voidable, because it did not show that the obligors, or some one of them, were claimants of the boat, or otherwise interested in the litigation respecting it; or because it was made payable to the officer who executed the order of seizure, instead of the libellant; or because it provided for the return of the boat to the obligee, instead of stipulating that the claimant should pay the libellants such judgment as should be rendered on the libel; or because it does not provide, that upon the payment of such decree as may be rendered, the obligors shall be discharged from their obligation to return the boat. Such a stipulation, if voluntarily entered into, and not extorted *colore officii*, may be enforced as a common law bond.

2. Where a statute requires a bond to be executed in a prescribed form, and not otherwise, no recovery can be had on a bond professedly taken under the authority of the act, if it does not conform to it; but if a statute merely prescribes the form, without making a prohibition of any other, a bond which varies from it may be good at common law. So if part of the condition of a bond conform to the statute, and part does not, a recovery may be had for the breach of the former, where so much of the condition as is illegal is not *malum in se*.

3. A sheriff who has duly seized goods, under legal process, has a special property in them, and should provide for their safe keeping. Where a mode is provided by statute in which this may be done, and the appropriate bond is taken, the officer is relieved from the obligation to keep it; but where the statutory bond is not offered, he may provide some other custody—either retain the possession himself, or commit it to a bailee; and if the bailee execute a bond, it will be obligatory, although the plaintiff will not be bound to accept it in lieu of the officer's responsibility.

4. A bond which the declaration alledged was made payable to a sheriff, did not state *in totidem verbis*, that he was such officer: *Held*, that the undertaking in the condition, that the obligors should perform it to the obli-

gee, or his successor in the office of sheriff, sufficiently indicated his official character. *Quere?* Would not the bond be *prima facie* good, so as to devolve the *onus* of impeaching it upon the obligors, though it had omitted to show who the obligee was, otherwise than by stating his name.

5. *Quere?* Would a bond taken by a sheriff, who had seized a boat under process issued upon a libel in nature of an admiralty proceeding, be void because he agreed that the obligors might navigate it to a point not very remote, and unlade its cargo, as the master had undertaken to do. Or would not the obligors be estopped from setting up such an agreement to impair their obligation?

6. Where the words of a bond were not sufficiently explicit, or if literally construed, their meaning would be nonsense, it must be construed in reference to the intention of the parties. In doing this, it is allowable to depart from the letter of the condition, to reject insensible words and to supply obvious omissions.

7. The obligors stipulated to deliver to the sheriff at a place designated, a boat which he had seized under legal process, on demand, if a decree of condemnation should be rendered against it—the sheriff "having execution then against:" *Held*, that the bond did not contemplate a demand at any particular place; and that the form of the execution which the sheriff held when he made the demand, was immaterial; if it was one which warranted the action of the sheriff against the boat.

8. The office of an *inuendo* is to explain, not to enlarge, and is the same in effect as "that is to say;" whether used for the purpose of enlarging, or other unauthorized purpose, it is not issuable, and furnishes no warrant for sustaining a demurrer to the declaration.

9. Parties who have entered into a bond as the bailees of property that had been levied on by a deputy sheriff, cannot object that the deputy transcended his powers, where the sheriff himself instead of objecting, affirms the act.

10. The act of 1818, declares that all joint bonds shall have the same effect in law as if they were joint and several; consequently, where a bond executed by a number of persons requires that a demand of performance shall be made in order to put them in default, it is enough to prove a demand of the obligor against whom suit is brought.

11. In an action upon a bond, if there is no issue which imposes upon the plaintiff the *onus* of proving its genuineness, it should not be rejected as evidence, because it has interlineations which he does not account for. Perhaps if it had been offered as evidence without having been made the basis of an action, and the interlineations were such as to warrant the suspicion that they had been made after the bond was executed, or without authority, they should be accounted for.

Writ of Error to the County Court of Sumter.

THIS was an action of debt, at the suit of the defendant in error against the plaintiff. The declaration contains five counts; the first alledges, that the defendant, together with John Huddleston, (as to whom the suit is discontinued,) and Isaac Smith, deceased, by his bond bearing date of the 7th of March, 1838, bound himself to pay the plaintiff the sum of six hundred and eighteen dollars and forty two cents, on demand. Yet, &c. The second count sets out that a bond of the same date and penalty was executed by the parties, payable on demand, subject to a condition thereunder written, which with its recitals is to the effect following: Whereas, "Andrew Beirne, Lyle B. Fawcett and John J. McMahon, then partners under the firm and style of Beirne, Fawcett & Co. had prepared their libel against the steamboat called the Triumph, for the sum of three hundred and nine dollars and twenty-one cents, the value of certain goods, wares and merchandize, to wit: twenty coils of rope and three kegs of nails, on which said libel an order of seizure had issued against said boat, her tackle, apparel and furniture, returnable to the Circuit Court to be holden in and for said county of Sumter, at the court house thereof, on the first Monday in April next, after the date of said writing obligatory, for further proceedings thereon, in Court. It was, and is, provided that said writing obligatory should be void, if said obligors, the aforesaid Huddleston, Whitsett and Smith, should, in case judgment should be recovered at the suit of said libellants, in their said proceeding against said boat, her tackle, apparel and furniture, produce said boat, her tackle apparel and furniture, to the said Womack, or to his successor in office, [meaning such person as should succeed said Womack in the office of sheriff of said county,] at the port of Gainesville, where said boat then lay, [meaning at the port of Gainesville in said county,] on demand thereof, at said port by said Womack, his deputy, or successor in office, having execution, [meaning thereby an order of sale from said Circuit Court, in said cause,] against said boat, her tackle apparel and furniture. But otherwise, that said writing obligatory should be and remain in full force and effect." It is then alledged, that pending the proceedings upon the libel, Lyle B. Fawcett died, and his survivors, Beirne & McMahon, at a Circuit Court for Sumter county,

commencing on the last Monday in September, 1841, recovered a judgment in said proceedings, for the sum of three hundred and eighty-one dollars and thirteen cents, with costs of suit.    Afterwards, on the 1st of November, 1841, an execution, in the form of an order of sale, was issued on that judgment against the "boat, her tackle, apparel and furniture," for the sale thereof; which execution, previous to the 23d November, came to the hands of Mathias E. Gary, then, and ever-since, sheriff of Sumter, and as such, successor to the obligee in the bond.    On the last mentioned day, and while the said execution was in full force and in his hands, said Gary demanded said boat, her tackle, apparel and furniture of the defendant, at the port of Gainesville; but the defendant refused and neglected to deliver the same, or any part thereof; nor did Huddleston, the other survivor of Smith then produce the same.    Nor was said boat, &c. then and there found; nor have they ever since been produced and found—nor have the obligees, or any of them, kept, or performed the condition of their bond, but have wholly failed, &c.

The third count states, that Beirne, Fawcett & Co. commenced their suit by libel on the 20th February, 1838; that the Triumph, her tackle, apparel and furniture, were seized on the 7th March thereafter, at the port of Gainesville, as she was on her passage and way upon the Tombeckbe river, by the obligee, then sheriff of Sumter.    That the obligor, Huddleston, then claiming to be an owner in said boat, with the assent of the libellants, executed a bond, together with his co-obligors as sureties; conditioned, as stated in the second count, that she might proceed on her way and passage, according to its original destination; the penalty and date of which bond were the same as stated in the two preceding counts.    It is then averred, that upon the execution and receipt of said bond, the plaintiff delivered the boat, &c. to Huddleston; in other respects, this count is substantially the same as the second.

The fourth count is similar to the third, except that it alledges in addition, that although the bond is made payable to Womack, yet it was in fact for the use and benefit of the libellants.

It is alledged in the fifth count, that the bond with its condition, was made and given by the obligors, as and for a bond with condition in form in such case provided by law, and was taken and received of them by the obligee in the belief and expectation

that such was its true character ; and in such belief and expecta-
tion the obligee delivered the boat, &c. to Huddleston. The
bond was voluntarily executed by the libellants, and its accep-
tance assented to by the libellants. This count is in other res-
pects similar to the second.

The defendant demurred severally to each of the counts, and
his demurrers were overruled. In his demurrer to the first count
he craved oyer of the bond, and set it out *in haec verba*, viz:
" The State of Alabama, county of Sumter. Know all men by
these presents, that we, John Huddleston as principal, and John
C. Whitsett and Isaac Smith securities, are held and firmly bound
unto Jesse Womack, sheriff of the county of Sumter, in sum of
six hundred and eighteen dollars and forty-two cents to be paid
to the said Jesse Womack, or his certain attorney, or executor,
or assigns, firmly by these presents ; sealed with our seals, and da-
ted the 7th day of March, A. D. 1838. The condition of the
above obligation is such, that whereas, Andrew Beirne, Lyle B.
Fawcett, and John J. McMahon, partners under the firm and style
of Beirne, Fawcett & Co. preferred their libel against the steam-
boat called the Triumph, for the sum of three hundred and nine
dollars and twenty-one cents, the value of certain goods, wares
and merchandize, to wit: twenty coils of rope, one keg of nails,
and two kegs of nails, whereon an order of seizure has issued
against said boat, her tackle, apparel and furniture, returnable to
the Circuit Court to be holden in and for said county of Sumter,
at the court house thereof, on the first Monday in April next, for
further proceedings in the premises. Now if the said obligors
above named, shall in case judgment shall be recovered at the
suit of the said libellants, in their said proceedings against said
boat, her tackle, apparel and furniture, produce said boat, her
tackle, apparel and furniture, to said Womack, or his successors
in office, at the port of Gainesville, where she now lies, on de-
mand thereof, thereat, by said Womack, by his deputy or suc-
cessor in office, having execution then against—then this obliga-
tion to be void, otherwise to remain in full force and effect.

JOHN HUDDLESTON, (L. S.)
JOHN C. WHITSETT, (L. S.)
ISAAC SMITH, (L. S.)"

The declaration being adjudged good, the defendant pleaded—
1. That the bond was taken without consideration. 2. That he

had performed every thing on his part by the terms of the condition required to be done and performed. 3. That he would have delivered the boat, &c. at any time, if a demand had been made by the sheriff, with an execution, but none was made, and that the defendant has kept and performed his undertaking, &c. 4. That the Triumph was sunk by being snagged in the Chickasawha, and has never been raised, so that she cannot be delivered. 5. That the Triumph was sunk by running against a concealed snag, and has never been raised, &c.

The plaintiff replied by a brief denial of the truth of all the pleas but the second; to that he replied, alledging breaches of the condition of the bond specially; but as no question arises upon this replication, it need not be more particularly noticed.

J. R. METCALFE, for the plaintiff in error, made the following points—1. Each count in the declaration describes the bond as payable to Jesse Womack, his heirs and executors, and the bond does not show; that at the time it was taken there was any process in his hands, or that in virtue thereof, he had seized the boat, &c.; nor does it appear that he was a sheriff, or other executive officer. 2. It is not shown by the bond that the defendant was the claimant of the boat, or surety for the claimant. 3. If the bond in question was intended as an official bond, or to be payable to an officer as such, still it is illegal; because it does not conform to the intention. A bond to an officer as obligee, when it should have been payable to the plaintiff in the suit, is a nullity. [Purple v. Purple, 5 Pick. Rep. 226.] A bond taken by a sheriff upon permitting a prisoner to escape is void, [4 Mass. Rep. 374; 5 Id. 541; 1 Term Rep. 418,] and upon the same principle, a bond given by a party to an officer, upon receiving property from the latter, on a condition not prescribed by law, is alike void. In the condition of the bond, the obligors undertake to return the boat to the plaintiff, instead of providing that the claimant should pay the libellant such judgment as should be rendered on the libel. [Clay's Dig. 139.] The obligors cannot be regarded as the mere custodians of the boat, &c. for the sheriff, if they are nothing more than his bailees, then they were not authorized to employ the boat in the business of carrying. In respect to this identical bond, this Court has decided that it did not release the boat from the lien, and it was yet within the jurisdiction of

the Court, [2 Ala. Rep. 743.] From this decision it results, that the boat was constructively in the possession of the sheriff, and he might have taken it at any time. In Gayle v. Martin, 3 Ala. Rep. 597, a bond to the plaintiff, who released his lien, was held to be good, but if the lien had still continued in force, it would have been inoperative, in favor of the obligee, and could not have been enforced against the obligors.

4. The law does not authorize any one but the claimant of the boat to replevy, and another person cannot deprive him of his right; besides the claim must be put in on oath. Here it does not appear that any oath was made by the obligors, or that they were claimants. Where, in a case commenced by attachment, a replevy bond was executed by a person who was not the owner of the property, nor his agent or attorney, it was held that such bond was void, [2 Porter's Rep. 497,] both as a common law and statute bond. Here is a case analogous in principle to the present, and the reasoning upon which it rests applies with all force.

5. The condition of the bond is insensible, uncertain, and the obligation cannot be enforced. [2 Buls. Rep. 133 ; Shep. Touch. 373.] While it provides for the delivery of the boat at, &c. to the obligee, or his successors, having an execution, it omits to state against whom the execution is to be, &c., and what office the obligee holds. When the bond was considered by this Court in this case, *supra*, it was held that the execution must be against the defendants, but the plaintiffs alledge that it is to be in the nature of an order of sale against the boat, &c. If the sheriff meant to take a statutory bond, he must have intended that the execution should have been against the obligors, and they are substituted by law for the thing seized. The *inuendos* as to the meaning of this part of the condition, which is contained in all the counts but the first, is not sustained by the condition of the bond, but adds to, and contradicts it, which can no more be done by allegation than proof. The declaration is defective in not alledging that when the boat was demanded the sheriff had an execution against the obligors.

6. The bond is objectionable for the further reason, that it does not provide, that upon the payment of the amount of the judgment, the obligors shall be relieved from the obligation to return the boat. 7. The bond contemplates a demand of the *obligors*,

before they shall be liable for failing to return it, but the declaration only alledges a demand of the defendant, without stating any excuse for the failure to make it of Huddleston. 8. It appears that the boat was taken by a deputy sheriff; conceding that the obligee might make a contract which would bind him individually in respect to property seized under process, yet a deputy could not take upon himself to act as agent in such case.

9. The bond has several interlineations, and as these are presumed to have been made after it was executed, and were not accounted for, it should have been excluded as evidence. It is misdescribed in the declaration, and defects attempted to be supplied by *inuendos* which explain and add to it.

BALDWIN, for the defendants in error, stated that the principal question was, whether the bond was founded on a valuable consideration, and not opposed to public policy? If it was not obnoxious to either of these objections, it was good as a common law obligation, although it did not conform to the statute. The delivery of the boat to the principal obligor, was a sufficient consideration, and as to the objection upon the ground of policy, it is believed to be alike untenable.

The case of an indemnity to an officer not discharging his duty, is neither analogous in fact, or principle to the present. There, the bond is void upon obvious grounds of policy; here the objection is to *the form of the security*, and not to the consideration, or inducement which caused it to be taken. Here the sheriff committed an honest mistake, in endeavoring to discharge a legal duty, and the bond must be upheld.

The sheriff has merely bailed the boat, &c. to Huddleston, and all the obligors stipulated that he should return it in a certain event. Now if the event provided for by the condition has actually taken place, it is insisted that the bond has become absolute, and that the action is maintainable. What is to hinder him from bailing property levied on; it may be the cheapest and safest mode of taking care of it; besides his liability as an executive officer, to the plaintiff, still continues, and the bailee is responsible to him. The counsel of the plaintiff in error seeks to avoid the effect of this argument by saying, that although the sheriff may bail property he has seized, yet he cannot authorize the bailee to use it. Now it will be observed, that the declaration, (unless it

60

be the third count,) does not aver an authority to all or either of the obligors to ply the boat; and the bond itself is silent on this point. But it is not admitted that the sheriff might not employ the boat, either under his personal direction, or through a bailee. If she is injured by such use, he is responsible, but this is the only consequence that follows. What rule of law inhibits a sheriff from working a horse or slave which he has levied on, if he treats him kindly; especially when by so doing the costs are lessened?

As to the legal validity of the bond, see the authorities collected in 1 Pirtle's Dig. Tit. Bonds; 26 Wend. Rep. 502; 1 Wash. Rep. 367; 2 Stew. 509; 2 Porter's Rep. 493; 6 Id. 414; 1 Ala. Rep. N. S. 316; 3 Ala. Rep. 593.

As to the official character of the obligee of the bond, it is sufficiently shown by the penal part of it; in other respects the condition of the bond is not insensible; its meaning may be ascertained by transposing words actually used, or by supplying others necessary to supply the obvious meaning of the parties. The construction given to some parts of the condition, when this case was here at a previous term, was perhaps influenced by the form of the transcript; at any rate it was not a point in controversy. But conceding that the language of the bond is susceptible of two meanings, after verdict it will be intended, that that alledged in the pleading was sustained by the proof.

The stipulation is to return the boat; this is enough to show, that the execution contemplated, was to be against the boat, and not against the obligors. It is admitted that the office of the *inuendo* is to explain and define, not to enlarge, and it is for this purpose that it is used in the declaration—it is by no means admitted, that the declaration would be affected if the inuendos were all stricken out.

The bond, by legal construction, is joint and several, and though in terms it may provide for a demand from the obligors, yet if it is made of either one of them, as to him it is sufficient. But was any demand necessary—was not the service of the writ a sufficient demand?

If the question really arises, it is insisted that the deputy sheriff had all the authority which his principal possessed, to bail the boat. But if the bond be good at common law, the objections to

the declaration, at most go to the form of declaring, and are not available on general demurrer.

In respect to the interlineations of the bond, and its description in the declaration, it is enough to say that there was no plea denying its execution, or the correctness of its description, but the issues all admitted its existence.

Although the bond does not provide for the obligors' discharge, without the return of the boat, it cannot be doubted that they may relieve themselves by paying the amount of the judgment upon the libel.

The omission to aver the value of the boat is not fatal on general demurrer; especially when it is averred that the plaintiffs obtained judgment for a certain sum, and have sustained damage, &c. These damages, it must be intended, were proved.

COLLIER, C. J.—It is said to be a general rule, that a bond, whether required by statute or not, if entered into voluntarily, and for a valid consideration, and not repugnant to the letter or policy of the law, is good at common law. [2 J. J. Marsh. Rep. 418; 3 Id. 437-8; 1 Ala. Rep. N. S. 316; 3 Ala. Rep. 593.] In Sewall v. Franklin, et al. 2 Porter's Rep. 493, this Court, after an extended review of the authorities, concluded, that " bonds taken by civil officers, and in relation to judicial proceedings, though without the authority of our statutes, (like bonds between individuals under other circumstances,) if they appear to have been given on valid and sufficient consideration, such as is neither illegal or immoral, may be good as common law bonds." The bond in that case did not conform to the statute, because it was payable to the *plaintiff*, instead of the *sheriff*, and although the Court was equally divided upon the question, whether it was operative, many adjudications were cited which maintained, that when such a bond is executed voluntarily, it is good at common law. See 1 Call's Rep. 219; 1 Munf. Rep. 500; 5 Mass. Rep. 314; 2 Stew. Rep. 509. But see Purple v. Purple, 5 Pick. Rep. 226.

Replevin, and other bonds required by statute have frequently been adjudged to be valid common law obligations, though not executed in obedience to the legislative direction. [7 John. Rep. 554; 2 Bibb's Rep. 199; 2 Litt. Rep. 306; 4 Id. 235; 3 Monr. Rep. 342; 4 Id. 225; 5 Mass. Rep. 314.]

A statute of Kentucky required that a bond for building a bridge should be made payable to the *Commonwealth*, but instead thereof, the Justices of the County Court were made the obligees. It was held, that as there was "no statutory provision making such a bond void," and the subject matter was such as the parties had a right to contract about, the bond was valid. [2 J. J. Marsh. Rep. 473.]

It is said that a bond taken by a sheriff, when the constable alone has the right to execute the process to which it relates, is void. [3 J. J. Marsh. Rep. 181.] So is a bond given to an officer, in consideration of an act that he has no legal authority to do. [3 Id. 621.] Or as an indemnity to an officer to induce him to perform a duty required of him by law. [5 Monr. Rep. 529.] Or to indemnify him for not returning an execution. [2 Bay's Rep. 67.] But if it be given to a sheriff by one who claims the property levied on by him, to indemnify him for not selling, it is valid. [6 Litt. Rep. 273 ; 2 Pick. Rep. 285.]

A bond taken of one in custody, by the officer who arrests him, is unlawful and void. [2 Chip. Rep. 11 ; 5 Mass. Rep. 541 ; 1 South. Rep. 319.] But a bond given for the prison liberties, though not strictly conformable to the statute, is not a bond for ease and favor, and may be good at common law. [8 Mass. Rep. 373; 3 Greenl. Rep. 156 ; 5 Id. 240.]

If a statute require that a bond shall be taken in a certain prescribed form, and not otherwise, no recovery can be had thereon, if it vary from the statute, or contain more than the statute requires. [Gilpin's Rep. 155.] But if the statute does not declare, that the bond shall not be taken in another form, a bond not conformable to the statute may be good by the common law. [2 J. J. Marsh. Rep. 473 ; 4 Monr. Rep. 225 ; 4 Litt. Rep. 235.] Where the authority to take a bond is wholly derived from the statute, if the bond be in a larger sum than is required, or on conditions, and be not voluntarily given by the obligors, it is void. [7 Cranch's Rep. 287 ; 3 Wash. C. C. Rep. 10.] And so also, is a bond *exacted* by an officer, when he has no authority. [11 Mass. Rep. 11 ; 15 Johns. Rep. 256; 2 J. J. Marsh. Rep. 418 ; 1 Leigh's Rep. 485.]

A bond variant from that prescribed by law, extorted from the principal obligor and his sureties, *colore officii*, it is said, cannot be enforced. [8 Greenl. Rep. 422 ; 5 Pet. Rep. 129.]

If part of the condition of a bond conform to the statute under which it was taken, and part does not, a recovery may be had for the breach of the former, where so much of the condition as is illegal is not *malum in se*. [Bates and Hines v. The Bank of Ala. 2 Ala. Rep. 484, 487; 4 Wash. C. C. Rep. 620; 2 Bailey's Rep. 501; 7 Monr. Rep. 317; 2 Green's Rep. 479.] And although a statute bond may not embrace every thing required to be inserted in the condition, yet judgment may be recovered to the extent of the breach of the condition. [7 Yerg. Rep. 17.]

A bond to indemnify against an unlawful act or omission already past, it is said, is not unlawful. [1 Caine's Rep. 440.] In Claasen v. Shaw, 5 Watts Rep. 468, it was determined that a bond given by a stranger to a constable, who held an execution against a third person, conditioned for payment of the debt, interest and costs of the execution, or the delivery of the property to satisfy the same, at a certain time and place, is not valid as a statutory obligation; but is good at common law. So where an act in relation to the prison limits was repealed, in March, 1821, and a bond to keep within the same was taken in November of the same year. The bond was payable to the creditor, as required by the repealed statute, which the parties supposed was in force; and the question was whether the bond was valid. It was objected that the bond was void on the ground of ease 'and favor; but the Court said that the bond was payable to the creditor, and was never intended as a security to the officer. *Further*, the bond is not void, because it restrains liberty, and is thus opposed to public policy. " The principles of the common law give validity to the bond. There is no reason why the bond should not be good at common law, it having been voluntarily entered into for the benefit of the principal, to procure a relaxation of a lawful imprisonment, to which he could not be entitled without giving bond, and the bond being accepted by the obligee, he is entitled to judgment. [Winthrop v. Dockendorff, 3 Greenl. Rep. 156.]

When a sheriff has duly seized goods under a writ of *fieri facias*, he has such a special property in them as to enable him to maintain trespass or trover against any person who may take them out of his possession; for he is answerable to the plaintiff for the value of the goods, and the defendant is discharged from the judgment, and all further execution, if the goods levied on

amount to the debt, although the sheriff does not satisfy the plaintiff. [Watson's Sheriff, 191.] *Further*, it is said, that "the sheriff may, if he please, take a bond conditioned to pay the money into Court, on the return of a *fi. fa.* or to save him harmless against a false return to a *fi. fa.*—such bonds not being void for *ease and favor*, under the statute of 23 Hen. VI. c. 9 ; that statute extends "only to bonds given by, or for prisoners in custody on *mesne process*. But the sheriff, for releasing the defendant's goods, on taking a bond, would be liable to the plaintiff in an action for a false return, and the sheriff must seek his remedy over upon the bond." [Watson's Sheriff, 190.]

By the act of 1824, (Clay's Dig. 537-8,) proceedings in the nature of a libel in admiralty are given for the collection of certain debts against steamboats, &c. And it is enacted, that if the master, &c. of any boat, &c. shall enter into stipulation or bond, with sufficient sureties to answer all the demands, &c. against the boat, &c. the same shall be released and discharged from such lien. *Further*, the clerk of the Court in which the libel is filed, shall take the bond, or stipulation, and it shall not be void for want of form, but shall be proceeded on and recovered according to the plain intent and meaning thereof.

A subsequent statute, passed avowedly for the security of "merchants, mechanics and others furnishing materials or stores to steamboats, or other water craft, in the State of Alabama," enacts that the claimants of a boat which has been seized, "may replevy by entering into bond with sufficient surety to pay such judgment as shall be rendered on the libel." [Clay's Dig. 139, § 23.]

We have stated these principles, and cited some of the numerous authorities by which they are supported, that it might be seen how closely the law adheres to the dictates of reason and morality in carrying out the intentions of parties as evidenced by their contracts. If these citations are to be recognized as correctly ascertaining the law, it is then perfectly clear, that the bond is not either void or voidable, because it does not show that the obligors, or some one or more of them were claimants of the boat, or otherwise interested in the litigation respecting it ; or because it was not made payable to the libellants, instead of the officer who executed the order of seizure. It is clearly the duty of the sheriff to provide for the safe keeping of goods which he

may seize under legal process. The statutes prescribe one mode in which this may be done, and where the appropriate bond with surety is executed, the officer is relieved from the obligation to keep it. But it by no means follows, that these statutes were intended to control the sheriff beyond what their terms indicate; and if the bond they respectively require is not proposed to be executed, he may provide some other custody. Thus he may retain it under his continued supervision, or if he think proper, he may commit it to other hands, upon the bailee's undertaking, either with or without bond, that it shall be returned at some definite time, or upon the happening of some event in the future; and such an engagement will be obligatory upon the bailee, and his sureties. True, a bond executed otherwise than as the statute directs, would not discharge the sheriff from liability to the plaintiff, nor would the plaintiff be required to institute proceedings thereon. Yet if the bond was made payable to the plaintiff, it is difficult to conceive of a well founded objection to the maintenance of an action thereon, in the event of a breach. Such a suit would be the adoption of the act of the sheriff, and operate in law, (at least between the obligor and obligee,) as if the sheriff had acted under an authority previously granted by the latter; and thus the obligor would be estopped from insisting upon the informality of the bond, or the irregularity of the sheriff's proceedings.

It is not perhaps formally alledged, in some one or more of the counts that set out the condition of the bond, that the obligee was a sheriff, or other officer, authorized by process to seize the boat; yet this substantially appears by the undertaking in the condition, that the obligors should deliver it to his successor in the office of sheriff, &c. But would the bond be bad because it did not disclose the circumstances under which it was executed, or the authority of the obligee for taking it? Would not all presumptions be indulged in favor of its validity, and if it is obnoxious to legal objections, or is sustained by no sufficient consideration, does not the *onus* of making this apparent, devolve upon the obligors? These questions we think must be answered affirmatively.

True, the condition of the bond does not stipulate " to pay such judgment as shall be rendered on the libel," but merely for the return of the boat to the obligee and his successors in the sheriffalty. We should not suppose, if it were not so alledged in one count,

that the bond was intended to conform to the statute; but be this as it may, we have seen that it imposes a common law obligation, if it was voluntarily entered into, and is at least a good security for the sheriff, against the obligors. Considered as the undertaking of the custodian of the sheriff, the condition is entirely legal and it would seem most appropriate.

It does not appear from the bond, or the pleadings, that the boat was bailed with the understanding that it was to be navigated. In one or more of the counts, it is stated in substance, that the seizure prevented it from being thus used, and by committing it to the possession of the obligors, it was allowed to continue and complete its passage to the point of destination; but it is not alledged that this was a matter of stipulation between the sheriff, or that it in any manner entered into the contract of the parties. Suppose however, that the obligee did assent to the employment of the boat, can the obligors, after having availed themselves of the benefit derivable from the contract, be permitted to alledge its invalidity? Or could there be any legal objection to the navigation of the boat, if the purpose was to go to some point not very remote, where its master had undertaken to deliver goods, and there unlade? A contract contemplating such an employment, it seems to us, would oppose no rule of policy or law, and could not be prejudicial to either of the parties to the suit.

There was nothing said by us, when this case was previously here, that is decisive of any point now raised. True, we remarked, that "the bond taken by the sheriff in this case, is not the one prescribed by the statute, and therefore the lien was not discharged by it; but continued in full force, and the steamboat is to be considered as yet within the jurisdiction." This is nothing more than a declaration, that as the bond does not conform to the statute, it did not release the boat from the right which the plaintiffs acquired by the seizure, to have the decree in their favor satisfied by its sale; or in other words, that the bond in question did not, *in virtue of the statute*, inure to the plaintiffs, and was not a substitute for the boat. This proposition is not now controverted, and is entirely consistent with the idea, that the bond is a good common law obligation. Does it follow that because the lien upon the boat was not discharged, that the bond was gratuitously given? We think not. The sheriff may have giv-

Whitsett v. Womack, use, &c.

en some other equivalent for the engagement which the obligors took upon themselves. Such would be the legal intendment, and the reverse cannot be presumed in the absence of a plea and proof drawing the consideration in question.

In Cromwell v. Grundale, 12 Mod. Rep. 194, it was held, that where the words of a bond are not sufficiently explicit, or where their meaning if construed literally would be nonsense, we must endeavor to discover the intent of the obligor, and be guided thereby. In giving a construction to a bond, the Court will look to the intention of the parties at the time it was executed, and expound it as the law then was. [Union Bank v. Ridgely, 1 Har. & G. Rep. 324.] And the condition of the bond ought to be so construed, by rejecting insensible words, as to fulfil the intent of the parties. [Gully v. Gully, 1 Hawk's Rep. 20.] The Court may depart from the letter of the condition of a bond, to carry into effect the intention of the parties. [Cook v. Graham, 3 Cranch's Rep. 229; Minor, et al. v. The Mechanics' Bank of Alexandria, 1 Peter's Rep. 46.]

In Pennyman v. Barrymore, 18 Martin's Rep. 494, it was determined, that the words "fourteen hundred and ten," in a bond, may be understood to mean "fourteen hundred and ten *dollars.*" The cases here cited, rest upon a principle so reasonable, and well founded that their authority cannot be questioned; applying them to the condition of the bond declared on, and there can be no difficulty in adjusting its meaning. The undertaking of the obligors as gathered from the terms employed, is, that if the libellants shall recover a judgment, or decree in the suit they had instituted against the steamboat Triumph, her tackle, &c., then they would return her, with tackle, &c. to the obligee, or his successors in office, at the port of Gainesville, where she then lay —demand being made by the obligee, or his successor in office, or the deputy of either of them, having an execution in his hands issued upon the judgment or decree. This exposition of the condition, seems to us perfectly clear, without doing the least violence to the language employed. It was not contemplated that a demand should be made at any particular point; and the form of the execution is wholly immaterial. If it was one that warranted the action of the sheriff against the boat, its sufficiency is indisputable; and as there was no stipulation, such as the statute

requires, the most reasonable inference is, that it was process operating *in rem*, and authorizing the sale of the boat.

The office of an *inuendo* in pleading, it is said, is *to explain, not to enlarge*, " and is the same in effect, as *that is to say*." It is used almost exclusively in practice, in actions for defamation, and in such case the plaintiff cannot merely by force of an *inuendo* apply the words to himself. " The *inuendo* means no more than the words aforesaid." The introduction of facts under it will not be deemed a sufficient averment of them; that which comes after it, is not *issuable*; if an *inuendo* is *repugnant*, it may be rejected, or if intended to enlarge it will be treated as *surplusage*. [4 Bac. Ab. 516; Corbet v. Hill, Cro. Eliz. 609; Dane's Ab. ch. 63, Art. 5 and 8, and citations there found.] It is immaterial then, whether the *inuendo* is used for the purpose of enlarging or other unauthorized purpose, it is not *issuable*, and furnishes no warrant for sustaining a demurrer to the declaration.

It is immaterial whether the bond was taken by the sheriff in person; if the boat was bailed by a deputy, the inference would be, that the act was authorized by the principal, or that it was sanctioned and approved by him. In any event, if the obligors had the benefit of their contract, and there was no effort by the sheriff to disannul it, they cannot be heard to set up the want of authority on the part of the deputy.

Let it be conceded that the bond contemplates a demand as necessary to put the obligors at fault, and entitle the obligee to maintain an action against them, and still we think it clear, that it is quite sufficient, if a demand has been made of the defendant alone. The statute of 1818 enacts, that every joint bond shall be deemed and construed to have the same effect in law, as a joint and several bond; and it shall be lawful to sue out process and proceed to judgment against any one or more of the obligors. [Clay's Dig. 323, § 61.] Thus we see that the obligors undertook each for himself and the others, and that the remedy of the obligee is against each, or all, at his election. This being the law, we think it will not admit of serious question, that a demand of the *party sued*, and a failure to comply, entitled the plaintiff to institute his action.

In respect to the interlineations of the bond, it is perhaps enough to say, that there was no issue which imposed upon the plaintiff the *onus* of proving its genuineness as declared on, or

set out on oyer, and we cannot conceive that the plaintiff was bound to account for its interlineations. If it had been offered merely as evidence, without being the basis of an action, then perhaps, if the *erasures* or *interlineations* were such as to warrant the suspicion that they were made after the bond was executed, or without authority, the obligee should account for them.

This view is decisive of the cause as presented, and the consequence is, that the judgment of the County Court is affirmed.